**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
DECEMBER 10, 2020

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
DECEMBER 10, 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TODD MCLAUGHLIN, a Washington resident, | ) ) ) | No. 97652-0 |
| Petitioner, | ) ) | |
| v. | ) ) | |
| TRAVELERS COMMERCIAL INSURANCE COMPANY, a foreign corporation, | ) ) ) ) ) | En Banc |
| Respondent. | ) ) | Filed: December 10, 2020 |

MADSEN, J.—Todd McLaughlin was riding his bicycle on a Seattle street when the door of a parked vehicle opened right into him. McLaughlin fell, suffered injuries, and sought insurance coverage for various losses, including his medical expenses.

McLaughlin's insurance policy covered those expenses if McLaughlin was a "pedestrian" at the time of the accident. Clerk's Papers (CP) at 39. McLaughlin argues that a bicyclist is a pedestrian, relying on the definition of "pedestrian" found in the Washington laws governing casualty insurance. RCW 48.22.005(11).

McLaughlin used to live in California and bought his automobile insurance policy there. That policy included medical payments, or MedPay coverage, which is similar to the personal injury protection (PIP) coverage that is required under Washington law.[1] The salient question in this case, however, is the meaning of the undefined term "pedestrian" in McLaughlin's insurance policy. As explained below, under the terms of McLaughlin's insurance policy he was covered for medical payments, in the amount designated in the policy, for his bicycle-car accident if he qualified as a "pedestrian." Accordingly, the question for this court is whether the undefined term "pedestrian" in McLaughlin's automobile insurance policy includes bicyclists.

On this question the trial court ruled that the answer is no, reasoning that the plain, ordinary meaning of "pedestrian" excludes bicyclists. The Court of Appeals affirmed but relied largely on its view that the Washington statute defining pedestrian for purposes of casualty insurance, RCW 48.22.005(11) (discussed below), excludes bicyclists. *McLaughlin v. Travelers Commercial Ins. Co.*, 9 Wn. App. 2d 675, 680-82, 446 P.3d 654 (2019).

For the reasons discussed below, we disagree, reverse the Court of Appeals, and remand for further proceedings.

---

[1] *See* CP at 93 n.24 (referring to PIP as "a close cousin" of MedPay). The primary distinction between the two, for present purposes, is the amount of coverage. McLaughlin's insurance policy provided him with $5,000 worth of MedPay coverage instead of the minimum $10,000 PIP coverage that is required in Washington. *See* RCW 48.22.095(1)(a).

FACTS

McLaughlin was riding his bicycle near downtown Seattle when a motorist opened the door of his parked vehicle and hit McLaughlin. As a result, McLaughlin alleges that he "incurred tens of thousands of dollars in medical expenses." CP at 198.

At the time of the incident, McLaughlin was insured by Travelers Commercial Insurance Company. Travelers had issued McLaughlin an automobile policy in California, where McLaughlin had lived just before his move to Washington. The policy included MedPay coverage under which Travelers agreed to pay up to $5,000 worth of medical expenses incurred by an "insured." CP at 17-18, 39. The policy defined "insured" in part as "*You . . . as a pedestrian when struck by*[] *a motor vehicle*." CP at 39 (emphasis added). The policy did not define "pedestrian."

Shortly after the accident, McLaughlin filed a claim with Travelers. Travelers denied coverage because McLaughlin was not a "pedestrian" under the policy. CP at 64-65. Travelers quoted definitions of "pedestrian" purportedly from the Washington and California vehicle codes, both of which explicitly exclude bicyclists. *Id.* (purportedly quoting CAL. VEH. CODE § 467; apparently quoting from RCW 47.04.010(23)).

McLaughlin asked Travelers to reconsider, but Travelers stuck with its original decision. McLaughlin then notified the Washington State Office of the Insurance Commissioner that he planned to sue Travelers and again attempted to resolve the dispute without a lawsuit. Travelers adhered to its original position.

McLaughlin sued Travelers for, among other claims, breach of contract. The parties stipulated to certain facts and filed cross motions for partial summary judgment on

a single legal issue: "[W]hether [Travelers] breached its insurance contract when it denied coverage to [McLaughlin] for Medical Payments on grounds that [McLaughlin] was not injured as a 'pedestrian.'" CP at 11.

The trial court ruled that Travelers did not breach the contract because "an ordinary and common meaning of pedestrian does not include bicyclist." Summ. J. Hr'g at 22. Thus, the court granted Travelers' motion for partial summary judgment and denied McLaughlin's. To make the trial court's order final and thus immediately appealable, McLaughlin successfully moved to voluntarily dismiss without prejudice all his claims except breach of contract. That voluntary dismissal, along with the parties' stipulation to facts, provides the only issue for appeal: Under the insurance policy, does the word "pedestrian" include bicyclists?

Relying on the dictionary definition, the Court of Appeals began by holding that the term "pedestrian" does not include bicyclists. *McLaughlin*, 9 Wn. App. 2d at 680. The Court of Appeals additionally held that RCW 48.22.005(11), which defines pedestrian for purposes of casualty insurance in Washington also does not include bicyclists, by allegedly "harmoniz[ing]" this statute with the definition of "pedestrian" contained in the Washington vehicle code at RCW 46.04.400. *Id.* at 681.

McLaughlin sought review, which we granted. 194 Wn.2d 1016 (2020).[2]

---

[2] Three organizations filed amicus briefs in support of McLaughlin: Cascade Bicycle Club, United Policyholders, and Washington State Association for Justice Foundation.

4

ANALYSIS

I

As a threshold matter, Washington law applies here concerning application of McLaughlin's insurance policy, which was originally issued in California. *See Woodward v. Taylor*, 184 Wn.2d 911, 915, 366 P.3d 432 (2016) (Washington law "presumptively applies" to cases filed in this state); *see also Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 103-04, 864 P.2d 937 (1994) (Washington trial court did not err in applying Washington law where a party failed to show a conflict between Washington's and another state's laws because "[a]bsent such a showing, the forum may apply its own law"); *id*. at 103 ("An actual conflict between the law of Washington and the law of another state must be shown to exist before Washington courts will engage in a conflict of law analysis."). Here, the parties agree that Washington law applies.

Further, Travelers has conceded that the California policy's MedPay coverage is equivalent to Washington PIP coverage for present purposes. In its briefing to the Court of Appeals, Travelers describes McLaughlin's insurance policy as containing various coverages, including "MedPay coverage (often referred to a[s] PIP coverage)," and continued to maintain that "Washington and California law are consistent with respect to the coverage issues presented." Br. of Resp't Travelers Commercial Ins. Co. at 4, 10 (Wash. Ct. App. No. 78534-6-I (2018)). That concession is valid. The nominal differences (e.g., required coverage amounts) are not material in the present context. The salient point is that McLaughlin's insurance policy provides for payments for injuries sustained by an insured.

5

Also, we are reviewing a summary judgment determination and thus focus our inquiry on the propriety of the trial court's ruling, limiting our inquiry to the record presented to the trial court and to the issues as presented to the trial court. *See Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 484, 258 P.3d 676 (2011) ("We review summary judgment rulings de novo, engaging in the same inquiry into the evidence and issues called to the attention of the trial court."); RAP 9.12 ("On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court.").

In its motion for partial summary judgment, Travelers argued to the trial court that the issue presented was "Whether Plaintiff [McLaughlin] is entitled to MedPay Benefits under his Travelers' Policy." CP at 69 (Def.'s Mot. for Partial Summ. J. Regarding Contractual Claims at 4). In its motion, Travelers conceded, "As set forth below, there is no conflict between the laws of Washington and California with respect to the contractual issues." *Id*. at 67 (Def.'s Mot. for Partial Summ. J. Regarding Contractual Claims at 2 n.2). "In this case, Travelers believes there is no conflict with respect to [McLaughlin's] contractual claims [for coverage]." *Id*. at 71 (Def.'s Mot. for Partial Summ. J. Regarding Contractual Claims at 6). Accordingly, as noted, the salient question in this case is whether under Washington law McLaughlin's injuries are covered under the terms of his policy of insurance with Travelers.

## II

Applying Washington law yields coverage for McLaughlin's injuries. Under McLaughlin's insurance policy, his insurer agreed to pay up to $5,000 worth of medical

6

expenses incurred by an "insured." *Id*. at 17-18, 39. The policy defined "insured" as

follows:

> B. "*Insured*" as used in this Coverage Section means:
> 1. *You* or any "resident relative":
> a. While "occupying"; or
> b. *As a pedestrian when struck* by;
> a motor vehicle designed for use mainly on public roads
> or a trailer of any type.

*Id*. at 39 (emphasis added). The policy does not define "pedestrian," but our legislature

has defined "pedestrian" for purposes of casualty insurance in Washington as follows:

"'Pedestrian' means a natural person not occupying a motor vehicle as defined in RCW

46.04.320."[3] RCW 48.22.005(11). Here, McLaughlin's bicycle did not contain a motor

and thus was not a motor vehicle. *See also City of Montesano v. Wells*, 79 Wn. App. 529,

532, 902 P.2d 1266 (1995) ("RCW 46.04.320 defines a *motor vehicle* as 'every vehicle

which is self-propelled . . .'; thus, a bicycle is not a motor vehicle." (alteration in

original)). McLaughlin's injuries occurred while he was riding his bicycle on a Seattle

street and was struck by an opening door of a parked car. He was not occupying a motor

vehicle at the time of the accident. Under the noted statute, he qualifies as a "pedestrian"

at the time of the accident; accordingly, he was "a pedestrian . . . struck by[] a motor

vehicle" resulting in injuries and thus an "insured" under the Travelers policy. *See* RCW

48.22.005(11); CP at 39.

---

[3] RCW 46.04.320(1) defines "motor vehicle" as "a vehicle that is self-propelled or a vehicle that is propelled by electric power obtained from overhead trolley wires but not operated upon rails."

Further, the express language of the noted definitional statute directs that "the definitions in this section apply throughout this chapter" (the chapter generally concerns "Casualty Insurance") and applies "[u]nless the context clearly requires otherwise." RCW 48.22.005. While PIP provisions are included in chapter 48.22 RCW, the chapter also includes other provisions addressing various aspects of multiple types of casualty insurance. *See* RCW 48.22.005 through 48.22.900. Under these circumstances, applying the plain language of RCW 48.22.005(11) to the automobile insurance coverage (i.e., the casualty insurance matter) at issue in this case is appropriate.

The Court of Appeals felt it necessary to "harmonize" the definition of "pedestrian" found in RCW 48.22.005(11) with RCW 46.04.400, which expressly excludes bicyclists from the definition of "pedestrian," favoring the latter statute. *McLaughlin*, 9 Wn. App. 2d at 681. We acknowledge that RCW 46.04.400 states, "'Pedestrian' means any person who is afoot or who is using a wheelchair, a power wheelchair, or a means of conveyance propelled by human power other than a bicycle." But that definition is taken from Title 46 RCW, which concerns "Motor Vehicles." And chapter 46.04 RCW contains definitions for use within that title, as expressly stated in RCW 46.04.010, "Terms *used in this title shall have the meaning given to them in this chapter except where otherwise defined*, and unless where used the context thereof shall clearly indicate to the contrary." (Emphasis added.) As noted, RCW 48.22.005(11) "otherwise defines" pedestrian for purposes of casualty insurance and, accordingly, applies to the insurance policy at issue here.

8

We note that RCW 47.04.010(23) similarly defines pedestrian as excluding bicyclists. This subsection defines "pedestrian" as "[a]ny person afoot or who is using a wheelchair, power wheelchair . . . , or a means of conveyance propelled by human power other than a bicycle." RCW 47.04.010(23). But this statute expressly defines pedestrian for purposes of Title 47 RCW, "Public Highways and Transportation," and begins with the following limitation: "The following words and phrases, wherever used in this title, shall have the meaning as in this section ascribed to them, *unless where used the context thereof shall clearly indicate to the contrary or unless otherwise defined in the chapter of which they are a part*." RCW 47.04.010 (emphasis added). Like RCW 46.04.400, as discussed above, this statute by its terms also does not apply in the present context addressing the issue of insurance coverage.[4]

Applying RCW 48.22.005(11) in this case is warranted because Washington courts have long recognized that relevant statutes are read into insurance contracts. "There is no longer any judicial doubt that the state may regulate insurance, so closely is that industry affected with the public interest, and regulatory statutes become a part of the policy of insurance. Thus, a valid statute becomes a part of and should be read into the insurance policy." *Touchette v. Nw. Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972) (citations omitted); *see also Ringstad v. Metro. Life Ins. Co.*, 182 Wash. 550, 553,

---

[4] We acknowledge that in *Pudmaroff v. Allen*, 138 Wn.2d 55, 70, 977 P.2d 574 (1999), this court concluded in part as follows: "We continue to adhere to the rule that bicyclists, though not pedestrians, are to be treated akin to pedestrians when they use crosswalks to traverse a roadway in the same manner as a pedestrian." But *Pudmaroff* has no application or impact here as it addressed only traffic safety laws in Washington and the opinion does not address or even mention insurance. *See id*. at 63 n.3 (noting that bicycles are treated in a variety of ways under various *traffic safety laws* in Washington).

47 P.2d 1045 (1935) ("It is . . . universally settled that statutory provisions are a part of [an insurance] policy."); *Mission Ins. Co. v. Guar. Ins. Co.*, 37 Wn. App. 695, 699, 683 P.2d 215 (1984) ("unlike other types of contracts, insurance policies must be interpreted in light of important public policy and statutory considerations"); *Ainsworth v. Progressive Cas. Ins. Co.*, 180 Wn. App. 52, 63 n.7, 322 P.3d 6 (2014) (same); *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 254, 850 P.2d 1298 (1993) (regulatory statutes become part of insurance policies); *Johnson v. Farmers Ins. Co. of Wash.*, 117 Wn.2d 558, 565, 817 P.2d 841 (1991) (same); *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 85, 794 P.2d 1259 (1990) (same); *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 526, 707 P.2d 125 (1985) (same).

Moreover, application of RCW 48.22.005(11)'s definition of pedestrian here comports with "Washington's strong public policy in favor of the full compensation of medical benefits for victims of road accidents." *Durant v. State Farm Mut. Auto. Ins. Co.*, 191 Wn.2d 1, 14, 419 P.3d 400 (2018). This court has long acknowledged that

> insurance policies . . . are simply unlike traditional contracts, i.e., they are not purely private affairs but abound with public policy considerations, one of which is that the risk-spreading theory of such policies should operate to afford to affected members of the public . . . the maximum protection possible consonant with fairness to the insurer.

*Or. Auto. Ins. Co. v. Salzberg*, 85 Wn.2d 372, 376-77, 535 P.2d 816 (1975). Applying RCW 48.22.005(11)'s definition of pedestrian affords the insured the maximum protection provided by the insurance policy and is not unfair to the insurer. Restated, it is not unfair to require an insurer to pay a coverage amount that the insurer agreed to pay

(in exchange for the insured's premium payment) when the insured suffers a covered injury.

### III

Our case law also establishes that when determining the meaning of undefined terms in an insurance policy, we look to the expectations of the average insurance purchaser. "Insurance contracts are construed in accordance with the meaning understood by the typical purchaser of the insurance." *Sprague v. Safeco Ins. Co. of Am.*, 174 Wn.2d 524, 528, 276 P.3d 1270 (2012). "When we construe the language of an insurance policy, we give it the same construction that an 'average person purchasing insurance' would give the contract." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007) (quoting *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990), *overruled on other grounds by Butzberger v. Foster*, 151 Wn.2d 396, 89 P.3d 689 (2004)). As noted above, the term "pedestrian" has several different meanings. Thus, even if RCW 48.22.005(11)'s definition of pedestrian in the insurance context is not applied here, at the very least, the undefined term is ambiguous. "A term will be deemed ambiguous if it is susceptible to more than one reasonable interpretation." *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750, 756, 239 P.3d 344 (2010). The vigorous debate in this case over the meaning of "pedestrian" demonstrates that the term is susceptible to more than one reasonable interpretation. Further, where multiple reasonable definitions of an undefined term in an insurance policy exist, (such as the various statutory definitions of pedestrian noted above, *e.g.*, RCW 48.22.005(11) (defining pedestrian in the casualty insurance context), RCW 46.04.400 (defining

11

pedestrian in the motor vehicles context), and RCW 47.04.010(23) (defining pedestrian in the public highways and transportation context)), courts adopt the definition that most favors the insured.  "[A]ny 'legal ambiguity' must be resolved in favor of the insured." *Webb v. USAA Cas. Ins. Co.*, 12 Wn. App. 2d 433, 445, 457 P.3d 1258 (2020); *see also Mesa Oil Co. v. Bus. Men's Assur. Co. of Am.*, 476 F.2d 491, 492 (9th Cir. 1973) (undefined terms in an insurance policy are to be construed in favor of the insured); *Holden*, 169 Wn.2d at 755-56; *Robbins v. Mason County Title Ins. Co.*, 195 Wn.2d 618, 626, 462 P.3d 430 (2020) ("Any ambiguity in the policy is interpreted in favor of the insured.").  This court reiterated this long-standing rule more than 70 years ago, acknowledging the

> "principle applying to contracts of insurance to the effect that, if they are so drawn as to require interpretation and fairly susceptible of two different conclusions, the one will be adopted most favorable to the insured; and will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer."

*Jack v. Standard Marine Ins. Co.*, 33 Wn.2d 265, 271, 205 P.2d 351 (1949) (quoting *Guar. Tr. Co. v. Cont'l Life Ins. Co.*, 159 Wash. 683, 688, 294 P. 585 (1930)).

Here, under McLaughlin's insurance policy provision discussed above, an insured would expect to be covered when injured in a collision with an automobile whether the insured was walking, skateboarding, using a wheelchair, standing on a sidewalk, sitting on a park bench, riding a bike, or doing something else.  The average purchaser of insurance would expect to be covered by this policy when injured by an automobile. Accordingly, we hold that McLaughlin's injuries are covered by his insurance policy.

IV

McLaughlin requests an award of attorney fees and expenses pursuant to *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), and RAP 18.1. *See* Suppl. Br. of Pet'r at 20. In *Olympic*, we held, "[A]n award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract." 117 Wn.2d at 53. We also noted that "RAP 18.1(a) authorizes an award of fees if 'applicable law grants to a party the right to recover reasonable attorney fees.'" *Id.* (quoting RAP 18.1(a)). Here, as the prevailing insured in this insurance coverage case, McLaughlin is entitled to fees. As we are remanding to the trial court for further proceedings, we also direct the trial court to determine the appropriate amount of fees and expenses to be awarded. *See* RAP 18.1(i) ("The appellate court may direct that the amount of fees and expenses be determined by the trial court after remand."); *Martini v. Boeing Co.*, 137 Wn.2d 357, 378, 971 P.2d 45 (1999).

CONCLUSION

The legislature defined "pedestrian" for purposes of casualty insurance in Washington broadly in RCW 48.22.005(11); that definition includes bicyclists and applies to the insurance contract at issue here. Even if we were to hold otherwise, at the very least, the undefined term "pedestrian" in the insurance contract at issue must be considered ambiguous in light of the various definitions of "pedestrian" discussed in this opinion. Being ambiguous, we must construe the insurance term favorably to the insured. Accordingly, we reverse the Court of Appeals and remand for further proceedings. We

13

No. 97652-0

also award attorney fees to McLaughlin and direct the trial court to determine the amount

of attorney fees to be awarded on remand.

_____
Madsen, J.

WE CONCUR:

_____   _____
Stephens, C.J.

_____   _____
Johnson, J.

_____
Owens, J.

_____   _____
Whitener, J.

14

*McLaughlin v. Travelers Commercial Ins. Co.*, No. 97652-0, (González, J., concurring)

No. 97652-0

GONZÁLEZ, J. (concurring)—I concur with Parts I, III, and IV of the majority opinion. The term "pedestrian" is ambiguous in this insurance policy and, as the majority concludes, must be construed in favor of the insured.

I cannot join Part II because I do not think we should apply the Washington casualty insurance act to a casualty insurance policy drafted and executed in another state. *See* majority at 8. However, like the majority, I disagree with the Court of Appeals' attempt to "harmonize" separate statutes that define "pedestrian." *Id*. Our statutes define "pedestrian" differently because those definitions serve different purposes depending on whether they concern insurance or travel on the highway. *See* Title 48 RCW ("Insurance"); Title 46 RCW ("Motor Vehicles"); Title 47 RCW ("Public Highways and Transportation"). Properly understood, these definitions do not conflict with each other.

With these observations, I concur.

González, J.

1

NO. 97652-0

GORDON MCCLOUD, J. (dissenting)—I agree with the majority that a

bicyclist is a pedestrian for purposes of Washington statutory insurance law. And

if we were interpreting a Washington personal injury protection (PIP) insurance

policy, I would import our statutory definitions into that policy.

But we are not presented with a Washington insurance policy. Todd

McLaughlin and Travelers Commercial Insurance Company entered into their

insurance contract in California for medical payment insurance under an entirely

different statutory scheme. I would interpret that California insurance contract by

looking to the intent of the parties when they executed it instead of relying on

Washington statutory law that the contracting parties never considered. That

California insurance contract covered medical payments for McLaughlin's bicycle-

car accident only if McLaughlin was a "pedestrian" at the time of the accident.

To be sure, that limitation would be unlawful for purposes of Washington

PIP coverage. RCW 48.22.005(5)(a) (defining "insured" to include the "named

insured" without qualification). But McLaughlin's California policy did not have

1

to comply with the minimum requirements for Washington PIP coverage: it did not provide PIP coverage at all, and it certainly did not transform into a Washington PIP policy when McLaughlin crossed state lines. Thus, the narrow question for this court is whether the undefined term "pedestrian" in that California, non-Washington, non-PIP, automobile insurance policy includes bicyclists.

The trial court ruled that the answer is no; it reasoned that the plain, ordinary meaning of "pedestrian" excludes bicyclists. The Court of Appeals affirmed but relied largely on a different reason: it analyzed the legal, technical meaning of "pedestrian" in the Washington PIP laws and held that Washington PIP law's use of "pedestrian" also excludes bicyclists. *McLaughlin v. Travelers Commercial Ins. Co.*, 9 Wn. App. 2d 675, 680-81, 446 P.3d 654 (2019), *review granted*, 194 Wn. 2d 1016 (2000).

I agree with the majority that the Court of Appeals erred—Washington statutory law certainly defines "pedestrian" to include bicyclists for purposes of Washington PIP coverage. But this case is not about Washington PIP coverage. I would therefore apply our normal rules of contract interpretation and consider what the parties intended "pedestrian" to mean when they executed this insurance contract in California. Because the plain, ordinary meaning of "pedestrian" does not include bicyclists, I dissent.

*McLaughlin v. Travelers Commercial Ins. Co.*, No. 97652-0
(Gordon McCloud, J., dissenting)


ANALYSIS

I. THE MAJORITY ERRS IN REJECTING THE ORDINARY MEANING THAT THE PARTIES INTENDED AND USING A TECHNICAL, WASHINGTON, PIP-BASED MEANING INSTEAD

   A. *We Should Apply Washington Contract Interpretation Law To Interpret This California Contract*

Although Travelers and McLaughlin contracted in California, I agree with the majority and the parties that we apply Washington law on contract interpretation here. "For cases filed in Washington State, Washington law presumptively applies." *Woodward v. Taylor*, 184 Wn.2d 911, 915, 366 P.3d 432 (2016) (citing *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 100-01, 864 P.2d 937 (1994)). To overcome this presumption, a party must show "[a]n actual conflict between the law of Washington and the law of another state." *Burnside*, 123 Wn.2d at 103-04 (citing *Int'l Tracers of Am. v. Estate of Hard*, 89 Wn.2d 140, 144, 570 P.2d 131 (1977)). As the majority says, "[T]he salient question in this case is whether under Washington law McLaughlin's injuries are covered under the terms of his policy of insurance with Travelers." Majority at 6.

   B. *Under Washington Contract Interpretation Law, Our Goal Is To Ascertain the Intent of the Parties; Nothing Suggests the Parties Intended To Incorporate Washington Law into Their California Contract*

Under Washington contract interpretation law, "a court's primary goal is to ascertain the parties' intent at the time they executed the contract." *Int'l Marine*

3

*Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282, 313 P.3d 395 (2013)

(citing *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990)).  Critically,

the court "must distinguish the parties' intent *at the time of formation* from the

interpretations the parties are advocating at the time of the litigation." *Id.*

(emphasis added) (citing *Berg*, 115 Wn.2d at 669).  Instead of analyzing the

parties' intent at the time they formed the contract, the majority imports

Washington statutory definitions into a contract formed in California.  Those

definitions have nothing to do with the intent of the parties at the time of contract

formation.

Travelers issued the insurance policy to McLaughlin in California.  Nothing

about the insurance contract mentions Washington or suggests that any party

intended to incorporate Washington insurance law.  But instead of interpreting the

undefined term "pedestrian" by what the parties intended in California, the

majority holds that that term should mean what it means under the Washington

laws regarding PIP coverage.[1]

---

[1] I agree that our the statutory definition of "pedestrian" for purposes of
Washington PIP coverage would include a bicyclist, contrary to the Court of Appeals'
holding.  RCW 48.22.005(11).  But I oppose the majority's use of our PIP statutes at all
in a case that does not relate to them.

To be sure, our "regulatory statutes become a part of the policy of insurance," and thus, we read our Washington insurance statutes into *Washington* insurance policies. *Touchette v. Nw. Mut. Ins. Co.*, 80 Wn.2d 327, 332, 494 P.2d 479 (1972). But insurance contracts "should not be given a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion, or render the policy nonsensical or ineffective." *Morgan v. Prudential Ins. Co. of America*, 86 Wn.2d 432, 434-35, 545 P.2d 1193 (1976) (citing *Phila. Fire & Marine Ins. Co. v. City of Grandview*, 42 Wn.2d 357, 255 P.2d 540 (1953)).

Instead of reading our statutory insurance law into a Washington policy, the majority reads it into an out-of-state policy with no nexus to Washington at its inception. The majority's interpretation produces the absurd result that insurance policy terms mean different things depending on where an accident happens or a lawsuit is filed. McLaughlin's insurance policy could have a different meaning in each state based on how that state's legislature has chosen to regulate insurance policies issued in that state. While diversity of state contract interpretation principles may well compel this result, in Washington at least, our focus should remain on the intent of the parties when they formed the contract. And that intent in no way reflects Washington's PIP statutes.

5

II.     WE SHOULD APPLY THE PLAIN, ORDINARY, AND POPULAR MEANING OF
        "PEDESTRIAN"—WHICH DOES NOT INCLUDE BICYCLISTS

Without looking to Washington's PIP statutes for a definition of

"pedestrian," it is an undefined contract term.  When we find such an undefined

term, we must give that term its "'plain, ordinary, and popular'" meaning.  *Boeing*

*Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990) (quoting

*Farmers Ins. Co. v. Miller*, 87 Wn.2d 70, 73, 549 P.2d 9 (1976); *Prudential Prop.*

*& Cas. Ins. Co. v. Lawrence*, 45 Wn. App. 111, 724 P.2d 418 (1986)).  We adhere

to "the meaning understood by the typical purchaser of the insurance."  *Sprague v.*

*Safeco Ins. Co. of America*, 174 Wn.2d 524, 528, 276 P.3d 1270 (2012) (citing

*Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007)).  For

guidance, we "look to standard English language dictionaries."  *Boeing*, 113

Wn.2d at 877 (citing numerous examples); *see also Jack v. Standard Marine Ins.*

*Co.*, 33 Wn.2d 265, 270-71, 205 P.2d 351 (1949) (explaining that dictionary

definitions are "not controlling" but are "generally accepted as the common

meaning of the word").

Of course, Washington law reflects a "strong public policy in favor of the

full compensation of medical benefits for victims of road accidents."  *Durant v.*

*State Farm Mut. Auto. Ins. Co.*, 191 Wn.2d 1, 14, 419 P.3d 400 (2018).  We have

said that insurance contracts "should operate to afford to affected members of the

6

public—frequently innocent third persons—the maximum protection possible consonant with fairness to the insurer." *Or. Auto. Ins. Co. v. Salzberg*, 85 Wn.2d 372, 376-77, 535 P.2d 816 (1975). Thus, we construe ambiguous language in an insurance policy against the drafter. *Holden v. Farmers Ins. Co. of Wash.*, 169 Wn.2d 750, 756, 239 P.3d 344 (2010) (citing *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 173, 110 P.3d 733 (2005)). But "[i]f policy language is clear and unambiguous, a court may not modify the insurance contract or create an ambiguity." *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576, 964 P.2d 1173 (1998) (citing *Am. Star Ins. Co. v. Grice*, 121 Wn.2d 869, 874, 854 P.2d 622 (1993)).

The plain, ordinary, and popular meaning of "pedestrian" does not include bicyclists. According to the dictionary, "pedestrian" means "a person who travels on foot **:** WALKER" or "one walking as distinguished from one travelling by car or cycle." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1664 (2002). That definition clearly and unambiguously excludes those travelling by car *or cycle*. This should resolve the only issue currently before the court. Given the plain,

7

ordinary meaning of "pedestrian," as reflected by the dictionary definition, a

typical purchaser of insurance would understand that term to exclude bicyclists.[2]

III.    THE LEGAL, TECHNICAL, PIP DEFINITION OF "PEDESTRIAN" DOES NOT CREATE
        AMBIGUITY

Here, the policy language is clear and unambiguous. As discussed above,

the plain, ordinary meaning of "pedestrian" excludes bicyclists.

The majority and concurring opinions seek to inject ambiguity into that

meaning of "pedestrian" by citing to the legal, technical definition of that term in

our PIP laws. But our state legislature's decision to extend coverage for

"pedestrians" to bicyclists[3] does not render the term "pedestrians" generally

ambiguous.

---

[2] We have held "that bicyclists, *though not pedestrians*, are to be treated akin to pedestrians when they use crosswalks to traverse a roadway in the same manner as a pedestrian." *Pudmaroff v. Allen*, 138 Wn.2d 55, 70, 977 P.2d 574 (1999) (emphasis added). That rule, which is based on statutory interpretation, should not apply here. But our language about bicyclists not being pedestrians suggests the answer to the issue currently before the court. *See also* RCW 47.04.010(23) (defining pedestrian to mean "[a]ny person afoot or who is using a wheelchair, power wheelchair . . . , or a means of conveyance propelled by human power *other than a bicycle*." (emphasis added)). As the majority points out, this definition applies "for purposes of Title 47 RCW, 'Public Highways and Transportation.'" Majority at 9. But Washington highway and transportation law is no less relevant to the intent of out-of-state contracting parties than is Washington insurance law.

[3] In fact, restricting coverage only to "pedestrians"—even under Washington's more inclusive definition of that term—would be unlawful for purposes of Washington PIP coverage because "insured" includes the "named insured" without qualification.

The reason is that the technical PIP definition does not control—the plain, ordinary meaning does. "If words have both a legal, technical meaning and a plain, ordinary meaning, the ordinary meaning will prevail unless it is clear that both parties intended the legal, technical meaning to apply." *Allstate Ins. Co.*, 136 Wn.2d at 576 (citing *Boeing*, 113 Wn.2d at 882). As discussed above, the plain, ordinary meaning of "pedestrian" excludes bicyclists. And there is no evidence that the parties, who contracted in California when McLaughlin lived in California, intended Washington PIP law to define the undefined terms of this California Medical Payments Coverage policy. Thus, we should apply the plain, ordinary meaning of "pedestrian" here. That meaning excludes bicyclists.

The legal, technical definition of "pedestrian" in our PIP laws and reflected in various Washington PIP policies does not make the plain, ordinary meaning of that term ambiguous.[4]

---

RCW 48.22.005(5)(a). Thus, the question in this case would never arise under an actual Washington PIP policy because bicyclists are already unambiguously covered regardless of whether they meet the definition of "pedestrian." This absurdity reflects the futility of shoehorning our Washington PIP definitions into a California medical payment policy formed without Washington law in mind.

[4] The majority relies in part on the very litigation itself to find ambiguity, noting that the "vigorous debate in this case over the meaning of 'pedestrian' demonstrates that the term is susceptible to more than one reasonable interpretation." Majority at 11. This interpretive principle that litigation implies ambiguity would result in the end of unambiguous contract terms. The clear, unambiguous dictionary definition of "pedestrian" is sufficient to resolve this case.

CONCLUSION

The plain, ordinary meaning of "pedestrian" excludes bicyclists.  There is no evidence that the parties intended the legal, technical definition of "pedestrian" in our PIP laws to apply to their contract instead.  I would apply that plain, ordinary meaning and end the analysis there.

I therefore respectfully dissent.

Gordon McCloud, J.

Yu, J.

Montoya-Lewis, J.

10